**Philip Martin ANDERER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–99–00858–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 12, 2001.

Rehearing Overruled June 7, 2001.

Matt Hennessy, Houston, for appellants.

William J. Delmore, Houston, for appellees.

Panel consists of Justices YATES, WITTIG, and FROST.

## OPINION

WITTIG, Justice.

Appellant ran a stop sign in his 18–wheeler and killed a motorist. He was convicted of the state jail felony of criminally negligent homicide with a finding of deadly weapon. The punishment was four years' confinement. In this appeal, we determine whether the sentencing scheme pertaining to appellant's offense impermissibly infringed on his right to elect the judge or jury to assess punishment. We also determine, under the equal protection clause, whether there is a rational basis for the statutory scheme for such state jail felonies. Further, we determine whether the state's request that appellant provide a copy of his counterfeit insurance card in an investigation subsequent to the accident violated his Sixth Amendment right to counsel. We affirm.

## Background

Appellant stopped his 18–wheeler behind a vehicle at a stop sign on Becker Road at the intersection with U.S. 290. Traffic on U.S. 290 was heavy and there was only a yellow caution beacon on that highway. As the vehicle in front crossed, appellant, without pausing at the stop sign, attempted to cross the highway. The complainant, who had the right-of-way, could not stop his vehicle and struck the side of appellant's rig. Shortly after, the complainant died from his injuries. The impact tore the roof of complaint's vehicle off, and it stuck to appellant's truck. Two witnesses testified they were concerned that appellant would attempt to flee when

appellant hurriedly removed the roof from his rig.

During the investigation at the accident scene, which took place on May 8, 1998, appellant produced a proof of insurance card to an officer. The officer took relevant information and returned the card to appellant. On May 9, appellant was formally charged with criminally negligent homicide. On May 11, appellant made an appearance in court. The case was reset because appellant had informed the court he intended to retain counsel. On or about May 15, another investigator assigned to the counterfeit task force, DPS Officer Manning, determined the information taken from the card did not show valid insurance coverage. On May 19, Manning went to see appellant and, informing him he was doing a follow-up investigation of the May 8 accident, requested appellant produce again the insurance card he had shown the other officer. Appellant complied and Manning determined the card was counterfeit.

After appellant was convicted, during the punishment phase, over appellant's objection, the state introduced Manning's testimony confirming that appellant had produced a counterfeit insurance card the day of the accident. The card was admitted into evidence. During closing argument, the state reminded the jury that appellant had displayed a counterfeit insurance card. The jury assessed four years' confinement.

## Counterfeit Insurance Card

■ We first address appellant's issues challenging the trial court's admission of the counterfeit insurance card during the punishment phase. Appellant correctly points out that the Sixth Amendment of the U.S. Constitution and Article I, § 10 of

the Texas Constitution guarantee a defendant assistance of counsel after formal charges have been made. A defendant's invocation of his right to the assistance of counsel prohibits the police from initiating a custodial interrogation without notice to his lawyer. *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). Thus, appellant argues, because the officer questioned him by stating he was following up on an investigation and requesting to see the insurance card, subsequent to his invocation of his right to counsel, the officer violated appellant's right to counsel.

The state counters that the Sixth Amendment right to counsel is offense-specific and does not attach to an offense for which no adversarial proceeding has begun. *McNeil v. Wisconsin*, 501 U.S. 171, 176, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). It contends that appellant's display of the counterfeit card at the scene of the accident was a completely separate offense from the negligent homicide offense. Because appellant was not charged for that offense, no right to counsel had attached for that offense. In light of the recently issued U.S. Supreme Court opinion in *Texas v. Cobb*, 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001), we agree.

We note that the Supreme Court explicitly overruled the "factually related" exception which had been set out by numerous lower federal and state courts, *id.* at 1341–42, 121 S.Ct. 1335, and which appellant relied upon in this case. Instead, the Court took a far more narrow approach to the Sixth Amendment right to counsel for uncharged offenses. It examined *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and explained that:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. We have since applied the *Blockburger* test to delineate the scope of the Fifth Amendment's Double Jeopardy Clause, which prevents multiple or successive prosecutions for the "same offence." We see no constitutional difference between the meaning of the term "offense" in the contexts of double jeopardy and of the right of counsel. Accordingly, we hold that when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offence under the *Blockburger* test.

*Id.* at 1342 (internal citations omitted).

Obviously, criminally negligent homicide and the display of a fraudulent insurance card could not be considered the same offense under the *Blockburger* test. Therefore, when appellant invoked his right to counsel for criminally negligent homicide, no right to counsel had attached for appellant's having displayed a fraudulent card. Thus, the court did not err in admitting Officer Manning's testimony regarding the card. We overrule this issue.[1]

1. Appellant claims that his right to counsel was also violated under Article I, section 10 of the Texas Constitution and article 38.23 of the Code of Criminal Procedure. However, he fails to demonstrate that the United States and Texas Constitutions differ in any relevant respect or how the code provides any additional protections. Therefore, we will assume for the purpose of this opinion that appellant's rights under the Texas Constitution and Code of Criminal Procedure are comparable to those secured by the United States Constitution. *See Dowthitt v. State*, 931 S.W.2d 244, 254 n. 4 (Tex.Crim.App.1996); *see also* Tex. R.App. P. 38.1(h); *Muniz v. State*, 851 S.W.2d 238, 251–52 (Tex.Crim.App.1993) (holding that court need not make appellant's arguments for him and address Texas constitution-

## The Sentencing Scheme

Next, appellant argues that the sentencing scheme under which he was punished "unjustly and arbitrarily chills his valuable statutory right to elect the judge or jury to assess punishment." Additionally, he claims it violates his federal and state guarantees to due process, due course, equal protection, and equal rights under the law. In support, he points to numerous provisions of the code of criminal procedure and penal code. We need not quote them all here. Rather, we observe that an effect of this statutory scheme is that a state jail felon who may be entitled to probation from a judge, is absolutely prohibited from seeking probation from a jury. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, §§ 3(e)(2), 3g(a)(2), 4(d)(2) & 15; TEX. PEN.CODE ANN. § 12.35. The end result, he states, is that a defendant who wishes to elect the jury in punishment in a state jail felony where the use of a deadly weapon is alleged, is put in the position of arguing in the guilt/innocence phase that he is not guilty of a state jail felony, but, at the same time, arguing that if the jury does find him guilty, to find him guilty of using a deadly weapon as well so that he may be eligible for probation in punishment.

Such a sentencing scheme, appellant argues, totally vitiates the bifurcated trial system guaranteed by article 37.07 of the code of criminal procedure. Appellant further, claims there is no rational basis for the disparate treatment of those accused of state jail felonies and those accused of any other non-capital felonies. Finally, appellant claims the scheme deprived him of due process and due course of law by denying him a fair trial.[2]

### Article 37.07 and the Sentencing Scheme

■ We first address appellant's statutory concerns. As appellant correctly states, article 37.07 gives the defendant the right to choose the judge or jury to assess punishment. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 2(b). However, this is not an "absolute right," as appellant couches it. We must keep in mind that article 37.07 is a statutory right, not a constitutional one, and that the statutes of which he complains are thus not necessarily trumped by article 37.07. While these statutes may affect appellant's determination of whether to choose judge or jury, and may very well even deter him from choosing one over the other, they do not impermissibly violate an "absolute right." For instance, in *Ex parte Moser,* 602 S.W.2d 530 (Tex.Crim.App.1980), *overruled on other grounds, Polk v. State,* 693 S.W.2d 391 (Tex.Crim.App.1985), the court held that, as long as a statute is enacted within the bounds of due process and other constitutional strictures,[3] the legislature may alter or abolish the article 37.07 right to choose punishment by judge or jury. *Id.* at 533. Likewise, we hold in this case that the statutory provisions cited by appellant are, at most, permissible legislative limitations to article 37.07. We read the sections in harmony to simply mean that where a defendant makes an election to be

al claims where appellant proffered no argument or authority concerning the protection provided by the Texas Constitution or how that protection differs from the protection provided by the United States Constitution).

**2.** In his brief, appellant sometimes appears to combine his statutory, equal protection and due process arguments together. Thus, it is not altogether clear which issues he is arguing at a given point. In the interest of clarity, however, we will do our best to address these issues separately.

**3.** There is nothing to indicate these statutes were enacted by the legislature without due process of law or in violation of any other constitutional limitation.

sentenced by the judge or jury, he or she does so subject to the limitations in other statutes. Thus, they do not violate his statutory rights under this article. We overrule this issue.

### Equal Protection

We next turn to appellant's equal protection argument. Appellant claims that the current statutory scheme arbitrarily creates classes of defendants which are treated differently. Essentially, the disparate treatment of which he complains is that a person accused of a state jail felony is never eligible for probation upon recommendation of a jury while all other persons accused of non-capital felonies are entitled to probation if a jury so recommends. Additionally, he claims there is unconstitutionally disparate treatment between categories of those accused of state jail felonies. That is, the accused who picks a jury for punishment is absolutely ineligible for probation while one who elects the judge to punish is at least eligible for probation.

The state points out that if a statutory classification does not discriminate against a suspect class, it need only be rationally related to a legitimate governmental purpose to survive an equal protection challenge. *Cannady v. State*, 11 S.W.3d 205, 215 (Tex.Crim.App.2000). In determining the constitutionality of a statute, a court will apply a presumption of constitutionality. *Patterson v. New York*, 432 U.S. 197, 211, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Those attacking the rationality of a legislative classification have the burden to negate every conceivable basis which might support it. *See*

*Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). We apply a highly deferential standard of review to equal protection claims of this nature. This standard is extremely respectful of legislative determinations and essentially means that a court will not invalidate a statute unless it draws distinctions that simply make no sense. *United States v. Jester*, 139 F.3d 1168, 1171 (7th Cir.1998). As stated in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970):

> [A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations-illogical, it may be, and unscientific. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*Id.* at 485 (citations omitted).

The state posits that because state jail felonies are unique, there was a rational basis in the legislature's decision to limit the discretion to award probation to judges, who, unlike juries, are familiar with the terms of probation, the availability of rehabilitative programs to state jail inmates, and other aspects of the state jail felony system. We agree that this is a rational basis for the sentencing scheme.[4]

---

4. We note that the legislature is not required to articulate reasons for enacting laws. An appellate court will uphold a statute as long as it implements any rational purpose, even if the legislature never considered the purpose when enacting the statute. *See F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). For constitutional purposes, it is irrelevant whether the conceived reason for the chal-

Thus, in light of our standard of review, there is no need to go any further. Because there is a rational basis for the state jail felony sentencing scheme, we hold the complained-of inequities do not violate the equal protection clause of the U.S. Constitution. We overrule appellant's equal protection issue.

### Due Process/Due Course

■■■ Appellant complains that his due process and due course rights were violated because it is "fundamentally unfair to grant a jury the right to have the jury assess punishment [under article 37.07] and then arbitrarily alter the full, statutory range of punishment for the offense by refusing to permit the jury to recommend probation [under article 42.12, §§ 3 & 4], when that same difference does not occur with any other felony of equal or greater severity." Because this argument is articulated in terms of a comparison between and within two classes of felons, we perceive it as more of an equal protection claim, which is dispensed with above. In any case, we do not discern a basis in appellant's brief for a claim that he, in his own right, was not given a fair trial under the statutes, in accord with due process or due course of law. We thus overrule appellant's due process and due course issues.

The judgment of the trial court is affirmed.

lenged distinction actually motivated the legislature. *See Flemming v. Nestor,* 363 U.S. 603, 612, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).