**Ronald Gene HOOKIE, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 06–03–00129–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Jan. 30, 2004.

Decided April 20, 2004.

---

Alex Tyra, Longview, for appellant.

Ray Bowman, Assistant District Attorney, Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

One week after being cited for maladjusted brakes on his log truck and promising to adjust them properly, Ronald Gene Hookie was unable to stop the truck at a red light and collided with a pickup truck in which Laurie Ann Davis was a passenger, killing her. A jury found Hookie guilty of criminally negligent homicide, and he was sentenced to one year in a state jail facility.

On appeal, Hookie asserts (1) the evidence was legally and factually insufficient to sustain his conviction, (2) Article 42.12, Section 4(d)(2) of the Texas Code of Criminal Procedure is unconstitutional in that it allows only the trial court to probate a sentence in state jail felony cases, and (3) his sentence was disproportionate to the offense for which he was convicted. We affirm.

*Background*

On October 15, 2002, Trooper Dennis Jones of the Texas Department of Public Safety (DPS) License and Weight Division stopped Hookie, who was transporting a load of logs from a job site to the mill.[1] During the thirty-minute inspection, Jones found twelve violations for which he issued two citations to Hookie. For the first axle brake that was out of adjustment, Jones declared the truck out of service,[2] meaning that the vehicle could not be operated until

measures were taken to remedy the deviation. Hookie told Jones he could properly adjust the brakes on site, which is a common practice in the trucking industry according to the testimony of both Hookie and Jones. Jones believed Hookie would adjust the brakes, so Jones continued on his way. Hookie testified that, as Jones was leaving, Hookie was already beginning to adjust the brakes. Between October 15 and October 22, there were no DPS inspections of Hookie's truck.

One week later, on October 22, 2002, friends Laurie Davis and Davina Russom were returning from a trip to Longview after having portraits made of Laurie's daughter and Davina's son. On their way home, the four stopped at a fast food restaurant on Highway 80, ate, and continued on their way.

Shortly thereafter, their pickup truck approached and, on a green light, entered the intersection of Highway 80 and Loop 485. Laurie warned Davina to "Watch that truck," referring to Hookie's loaded log truck. The warning came too late. The log truck collided with the pickup and sent it spinning and flipping high into the air. By the time the pickup landed, it was upside down and had ejected Laurie. The children crawled out the now-broken back window, suffering only minor injuries. Davina also escaped with minor injuries. Laurie was airlifted to a hospital, but died in transit due to massive head injuries.

After the collision, Hookie stopped his truck approximately 100 feet past the intersection on Loop 485. Several people

---

**1.** A DPS trooper from the License and Weight Division need not observe a traffic violation in order to stop and inspect a vehicle that qualifies as a motor carrier. Tex. Transp. Code Ann. § 644.103 (Vernon Supp.2004).

**2.** "Out of service" is a term used by a trooper to prohibit further operation of a vehicle that is not in compliance with safety regulations.

*See* Tex. Transp. Code Ann. § 644.103(c). Jones testified the vehicle was not to be operated until the repairs were made although, in some instances, when the adjustments cannot be made on site, it could be proper for the trooper to escort the truck to a mechanic's garage *in order to have the necessary repairs made.*

talked to Hookie during the moments after the collision. DPS Trooper Adam Bell was the first to arrive at the scene. Not considering the accident investigation a criminal one, he interviewed Hookie, who admitted his "brakes didn't hold." The conversation is recorded by Bell's in-car camera. Hookie said the same to investigating officer Jason Weeks of the Gladewater Police Department. Weeks called Jones to inspect the truck. Jones learned the truck was the same one he had inspected one week earlier. This inspection revealed that the brakes were even further out of adjustment than they had been one week before and that only two of the ten brakes on the truck complied with safety regulations.[3] For instance, the left front axle brake which had, only one week before, been two and *one-eighth* inches out of adjustment—and had been the cause Jones had declared the truck "out of service"—was determined after the accident to be out of adjustment by two and *one-fourth* inches.[4] The inspection also revealed several other safety violations.

Hookie admitted he had no brakes when he came to the intersection. He stated that, as soon as he discovered the brakes had failed, he tried to gear down the truck in order to stop it. Trooper Carl Davis, who arrived to assist at the scene, testified Hookie told him that the brakes did not work and that he gears down to stop the truck. Davis testified he passed this information along to Weeks.[5] Weeks testified that the accident investigation turned into a criminal one when he learned the truck had been declared out of service for violations which remained evident one week later—on the day of the accident.

---

3. The log truck sustained only superficial damage to its front bumper. This damage, according to Trooper Carl Davis, would not have been sufficient to have caused the brakes to go out of adjustment.

*Sufficiency of Evidence*

To review the legal sufficiency of the evidence, we examine the evidence in a light most favorable to the judgment to determine whether a rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Turner v. State,* 805 S.W.2d 423, 427 (Tex.Crim. App.1991). To review the factual sufficiency of the evidence, we determine whether a neutral review of all the evidence demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). The evidence is sufficient under both standards.

■ A person commits criminally negligent homicide if he or she causes the death of an individual by criminal negligence. TEX. PEN.CODE ANN. § 19.05(a) (Vernon 2003). The Code defines criminal negligence as follows:

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circum-

---

4. The maximum allowable movement in brakes of this type is one and three-fourths inches.

5. Weeks' testimony neither refutes nor corroborates Davis' testimony on this matter.

stances as viewed from the actor's standpoint.

TEX. PEN.CODE ANN. § 6.03(d) (Vernon 2003). The failure to perceive the risk distinguishes criminal negligence from reckless conduct. *Nash v. State*, 664 S.W.2d 343, 345 (Tex.Crim.App.1984). Criminal negligence requires that the person should have been aware of the risk surrounding the conduct or the results of the conduct. *Lewis v. State*, 529 S.W.2d 550, 553 (Tex.Crim.App.1975). Thus, the State must prove that a defendant ought to have been aware of a substantial and unjustifiable risk. *Lopez v. State*, 630 S.W.2d 936, 940 (Tex.Crim.App.1982); *Thompson v. State*, 676 S.W.2d 173, 175 (Tex.App.-Houston [14th Dist.] 1984, no pet.). Also, the State must establish that the failure to perceive this risk was a gross deviation from the standard of care that an ordinary person in those circumstances would exercise. *Graham v. State*, 657 S.W.2d 99, 101 (Tex.Crim.App.1983).

■ No one argues that the collision did not cause the death of Laurie Davis. Beyond that, however, to convict, the State must have established (1) that Hookie should have been aware his conduct posed a substantial and unjustifiable risk and (2) that Hookie's failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person would have exercised under similar circumstances. *See Stadt v. State*, 120 S.W.3d 428, 433 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

The record shows, through Hookie's testimony, he has operated a truck for approximately thirty years and has driven a log truck for five years. From this evidence, the jury could have reasonably concluded Hookie should have been aware of the substantial and unjustifiable risk posed by operation of the truck with maladjusted brakes. Further, since Jones had issued citations for the brakes and had declared the truck out of service due to the poor adjustment of the brakes, that should have made Hookie realize the substantial risk posed by operation of the vehicle without making the proper adjustments or without careful daily inspections of those brakes.

From the evidence, a jury could have reasonably concluded Hookie's continued operation of the truck with the brakes out of adjustment constituted a gross deviation from the standard of care an ordinary person would have exercised under those circumstances. Hookie, as the driver of the truck, had a statutory duty to conduct a daily inspection of the truck, including the condition of the brakes.[6] Further, having heard that brake adjustment is a common concern, the jury could conclude a reasonable person in those circumstances would have made the repairs after citations were issued for the safety violations and would have been especially vigilant about the brakes during his or her daily inspections. Hookie testified he did a visual inspection of the truck the morning of October 22 in which he looked to see if anything was out of the ordinary. The jury either disbelieved him or determined that, even if he had done as he said and walked around the truck, his cursory inspection was insufficient to guard against the substantial risk posed under these circumstances. Jones also testified, based on his experience as a trooper in the License and Weight Division, that a reasonable person would not have operated a truck under such conditions.[7] There is legally

---

6. 49 C.F.R. §§ 396.11–396.13. Texas has adopted federal regulations regarding motor carrier safety. TEX. TRANSP. CODE ANN. § 644.051 (Vernon 1999); 26 Tex. Reg. 9754 (2001) (codified at 37 TEX. ADMIN. CODE § 4.11) (in effect at time of accident).

7. Referring to the measurements on certain brakes and also to the weight on the rear axle

sufficient evidence of this element of the offense. Examining the evidence in a light most favorable to the conviction, we conclude the jury reasonably could have found all essential elements of criminally negligent homicide.

Hookie contends that, since he made the repairs October 15, he did not fail to perceive the risk that poorly adjusted brakes would pose. He argues that the brakes had gone out of adjustment again by October 22 and that this collision was an unavoidable accident. When a defendant claims the result was an unavoidable accident, the courts have treated this as an issue raising the voluntariness of the act. *See Williams v. State*, 630 S.W.2d 640, 644 (Tex.Crim.App.1982) (op. on reh'g) (stating "the bench and bar would be well advised to avoid the term 'accident' in connection with offenses defined by the present penal code"). In order to commit a criminal offense, one must voluntarily engage in the designated conduct by act, omission, or possession. TEX. PEN.CODE ANN. § 6.01 (Vernon 2003). So, the State was required to show that Hookie committed a voluntary act with the requisite state of mind. *See Rhodes v. State*, 997 S.W.2d 692, 694 (Tex.App.-Texarkana 1999, pet. ref'd). That is, the State had to show that Hookie's operation of the truck with badly maladjusted brakes was committed with criminal negligence.

Hookie readily admits that the brakes went out and that the light was red when he entered the intersection. After having compared the violations found October 15 with those found one week later, on the day of the collision, Jones testified that, in his opinion, Hookie simply had not made the adjustments he claimed. Further, the jury could have determined from the measurements taken during the two inspections that the repairs were not made. The

left front axle brake was out of adjustment by two and one-eighth inches October 15; on October 22 the same brake was two and one-quarter inches out of adjustment. Since the condition of the brakes had worsened, the jury could have reasonably concluded the repairs were not performed within one week of the accident. Further, ten out of twelve brakes on the truck were out of adjustment October 22. One brake on axle number four showed so much rust it appeared to have been inoperable for some time, a defect Hookie would certainly have noticed had he adjusted all the brakes October 15 as he testified or had carefully inspected the truck each day. Finally, Davis' testimony that Hookie indicated to him he regularly used the "gearing down" method to stop the truck due to its faulty brakes weighs in favor of the jury's verdict. Such conditions lend themselves to a conclusion that the necessary adjustments were not made October 15 as Hookie stated, or between then and the time of the accident.

The jury could also rely on the testimony of Davis, who testified Hookie told him the truck's "brakes don't work." From this, the jury could conclude Hookie did not make the repairs and, thus, did act with the requisite state of mind. The jury could have reasonably concluded from the evidence presented to it at trial that Hookie continued to operate the truck after it was declared out of service, that he should have been aware that doing so created a substantial and unjustifiable risk, and that such operation was a gross deviation from the standard of care that an ordinary person would exercise under those circumstances.

The evidence to the contrary, that is, supporting Hookie's contention the collision resulted from an accident, consists

being 7,500 pounds over the limit.

largely of Hookie's testimony. Again, he concedes that the light was red and that the brakes were gone. He maintains, however, he made the repairs necessary to get the brakes back into compliance with safety regulations October 15 immediately after having been cited for the safety concerns and being notified the truck was declared out of service until the adjustments were made. He claims to have adjusted every one of the brakes. There is some evidence which supports this position. Jones and Hookie both testified that brakes going out of adjustment is a common mechanical problem in the trucking industry and that it is also common for an experienced truck driver to adjust the brakes on site.

■ Reconciliations of conflicts in the evidence is the exclusive province of the jury. *Stadt*, 120 S.W.3d at 436. We are not to substitute our opinion for that of the jury. *Id.* Rather, we recognize that the determination of weight to be given to conflicting evidence often depends on an evaluation of credibility. *See id.* Therefore, the jury was free to disbelieve or give less weight to Hookie's testimony that he

made the necessary adjustments to the brakes October 15. We defer to that finding.

Considering all the evidence in a neutral light, we cannot say the jury's verdict was based on factually insufficient evidence. The evidence supporting a finding of guilt is not so weak as to undermine our confidence in the jury's verdict. Nor does the evidence that the collision was the result of an accident greatly outweigh the evidence supporting the jury's verdict. We overrule Hookie's points of error regarding evidentiary sufficiency.

### Constitutionality of Sentencing

■ A jury may not allow a defendant community supervision on conviction of a state jail felony. Tex.Code Crim. Proc. Ann. art 42.12, § 4(d)(2) (Vernon Supp. 2004). But, a judge may suspend the imposition of such a sentence and place a defendant on community supervision. Tex. Code Crim. Proc. Ann. art. 42.12, § 15(2) (Vernon Supp.2004). Hookie complains this statutory scheme deprives him of his right to be considered for community supervision by a jury.[8]

---

**8.** We note, however, that Hookie's point of error also could be construed to raise the more general argument he was denied a general right to be considered for community supervision. Using this construct of Hookie's point of error, we note that Hookie *was* considered for community supervision and therefore conclude that Hookie suffered no demonstrable injury and, thus, lacked standing to challenge the constitutionality of Article 42.12, Section 4(d)(2) in that regard. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 4(d)(2) (Vernon Supp.2004). It is incumbent on a defendant to show that in its operation a statute is unconstitutional as applied in his or her situation, not just that it may be unconstitutional as to others. *Cantu v. State,* 939 S.W.2d 627, 643 (Tex.Crim.App.1997); *Parent v. State,* 621 S.W.2d 796, 797 (Tex.Crim.App. 1981). The record demonstrates that the trial court recognized its authority to place Hookie on community supervision, that it considered

the option, and that it clearly decided against granting community supervision, considering the severity of the crime. Therefore, since Hookie was considered for community supervision under the statute, he lacks standing to challenge Article 42.12, Section 4(d)(2) on the basis that it deprived him of a general right to be considered for community supervision.

It is well established that "the constitutionality of a statute will not be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised." *Skinner v. State,* 652 S.W.2d 773, 776 (Tex.Crim.App.1983); *Coberly v. State,* 644 S.W.2d 734, 735 (Tex.Crim.App. 1983). Since there is evidence the jury wanted to consider the imposition of community supervision, we will read Hookie's point of error as raising the more specific challenge and analyze his point of error as one concerning his right to have a jury recommend community supervision. Although we do know

Unless a statutory classification discriminates against a suspect class[9] not present here, it need only be rationally related to a legitimate state purpose. *Cannady v. State*, 11 S.W.3d 205, 215 (Tex. Crim.App.2000). Here, the classification scheme distinguishes between those convicted of a state jail felony and those convicted of another noncapital felony, not raising any suspect class issue. Therefore, the statute is constitutional if there is a rational relationship between the legislative classification and a legitimate state interest. *See Clark v. State*, 665 S.W.2d 476, 480–81 (Tex.Crim.App.1984).

In reviewing a statute's constitutionality, we begin with a presumption of the statute's validity, that is, presuming that the Legislature did not act unreasonably or arbitrarily in enacting the statute and that it had due regard for constitutional requirements. It is the challenger's burden to show that the statute is unconstitutional. Every reasonable presumption is made in favor of the constitutionality and validity of the statute. The statute must be upheld if a reasonable construction can be ascertained which will render the statute constitutional and carry out the legislative intent. We apply a highly deferential standard of review to equal protection claims of this nature. *Anderer v. State*, 47 S.W.3d 60, 66 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). One who challenges the rationality of a legislative classification must carry a heavy burden in that he or she must negate every conceiva-

ble basis which might support the classification. *Id.*

The Fourteenth Court of Appeals addressed this issue in *Anderer. Id.* The *Anderer* court held there was a rational basis in the Legislature's decision to give only judges the discretion to grant community supervision in some cases. *Id.* The court of appeals reasoned that trial judges, unlike juries, are familiar with the terms of community supervision, the availability of rehabilitative programs, and the other unique aspects of the state jail felony system. *Id.* Thus, the limitation is rationally related to the State's interest in an efficient criminal justice system.

Since there is a conceivable basis for maintaining this classification, Hookie has failed to meet his burden of negating all rational bases for the classification drawn by Section six of Article 42.12.[10] We overrule his point of error challenging its constitutionality.

*Proportionality of Sentence*

In his third and final point of error, Hookie contends the one-year sentence in a state jail facility is disproportionate to the offense. Hookie has failed to preserve this issue for our review. He did not object to the sentence on the ground it was disproportionate to the crime, or on any other ground, at the time it was imposed. To preserve a complaint for appellate review, an appellant must have presented to the trial court a timely

---

the trial court considered and rejected the possibility, we cannot know whether the jury would have recommended community supervision in this case. Therefore, we consider it necessary to determine the constitutionality of the article in order to address Hookie's point of error.

9. Suspect classifications include those based on race, alienage, and ancestry. *McDonald v.*

*State*, 863 S.W.2d 541, 546 (Tex.App.-Houston [14th Dist.] 1993, no pet.).

10. As the *Anderer* court points out, it is irrelevant to our analysis of the constitutionality of the law whether the conceivable basis for the classification is the one which actually motivated the Legislature. *See Flemming v. Nestor*, 363 U.S. 603, 612, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

request, objection, or motion, stating the specific grounds for the ruling desired. TEX.R.APP. P. 33.1(a)(1)(A); *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex.Crim.App. 1996). This Court has held that a defendant is required to raise a disproportionality objection to a sentence at the time the sentence is imposed. *Jackson v. State*, 989 S.W.2d 842, 845 (Tex.App.-Texarkana 1999, no pet.). Nothing is presented for our review and, thus, we overrule this point of error.

*Conclusion*

We hold the evidence supporting Hookie's conviction for criminally negligent homicide is both legally and factually sufficient. Further, we conclude Article 42.12, Section 4(d)(2) does not violate Hookie's right to equal protection under the federal and state constitutions. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 4(d)(2). Finally, we hold that Hookie failed to preserve error as to his complaint that his sentence of one-year in a state jail facility is disproportionate to the offense committed.

Accordingly, we affirm the judgment of the trial court.