ACCEPTED
06-15-00035-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
9/18/2015 9:51:03 AM
DEBBIE AUTREY
CLERK

06-15-00035-CR

NO. 06 – 08 – 00080 – CR

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
9/18/2015 9:51:03 AM
DEBBIE AUTREY
Clerk

IN THE SIXTH DISTRICT COURT OF APPEALS
TEXARKANA, TEXAS

CEDRIC BERNARD CARLDWELL

Appellant,

v.

THE STATE OF TEXAS

Appellee

On appeal from the 124TH District Court, Gregg County, Texas
Trial Court Case No. 42773-B

# BRIEF OF THE STATE OF TEXAS

– ORAL ARGUMENT NOT REQUESTED –

CARL DORROUGH
GREGG COUNTY DISTRICT ATTORNEY

Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
Gregg County, Texas
101 East Methvin St., Suite 333
Longview, Texas  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701

# TABLE OF CONTENTS

**INDEX OF AUTHORITIES**............................................................................2

**STATEMENT OF FACTS**............................................................................3

**SUMMARY OF THE ARGUMENT** ..........................................................9

**ARGUMENT**.................................................................................................10

1)      The Appellant failed to preserve error.............................................10

2)      Punishment assessed was neither cruel nor unusual. ....................11

**CONCLUSION AND PRAYER** ..................................................................16

**CERTIFICATE OF SERVICE** ...................................................................17

**CERTIFICATE OF COMPLIANCE** .........................................................17

# INDEX OF AUTHORITIES

**Federal Cases**

*Harmelin v. Michigan,*
    501 U.S. 957, 111 S.Ct. 2680, 115 L. Ed. 2d 836 (1991)    13, 14

*McGruder v. Puckett,*
    954 F.2d 313 (5th Cir.)    14

*Solem v. Helm*
    463 U.S. 277, 103 S.Ct. 3001, 77 L. Ed. 2d 637 (1983)    13

**State Cases**

*Fierro v. State,*
    706 S.W.2d 310 (Tex. Crim. App. 1986)    11

*Harris v. State,*
    656 S.W.2d 481 (Tex. Crim. App. 1983)    12

*Henderson v. State,*
    617 S.W.2d 697 (Tex. Crim. App. 1981)    11

*Hookie v. State,*
    136 S.W. 3d, 671 (Tex. App. –Texarkana 2004, no pet.)    10

*Jackson v. State,*
    989 S.W.3d 845 (Tex. App.—Texarkana 1999, no pet.)    10, 12

*McNew v. State,*
    608 S.W.2d 166 (Tex. Crim. App. 1978)    12

*Moore v. State,*
    54 S.W.3d 529 (Tex. App. – Fort Worth 2001)    12

*Price v. State,*
    35 S. W. 3d, 136 (Tex. App.--Waco 2000)    12

*Williams v. Scott,*
    1994 U.S. App. LEXIS 41605 (5th Cir. Tex. Oct. 26, 1994)    14

**State Statutes**

Tex. Penal Code Ann. § 12.32 and 12.42 (West)    12

## STATEMENT OF FACTS

Cedric Carldwell was charged, on July 11, 2013, with shooting Huey Lee Gray on April 14, 2013. See indictment, CR 24. When apprehended, he admitted the crime, but claimed self-defense because Gray allegedly called him names, threatened to choke him, spit in his face, and reached in his clothing as if to draw a weapon. See offense report, SX2 at 30. At that point, Carldwell told Detective Cheatham that he had shot Gray. *Id.*

The event was witnessed by several people who stated that Gray was not reaching for a weapon; his arms were at his sides and he had just asked Carldwell, "What you gonna do, shoot me?" See offense report, SX2 at 29.

Carldwell eventually pleaded guilty and asked the judge to set his sentence without the benefit of a plea agreement. See judgment, CR 25-29. After a pre-sentence investigation report was delivered to the Court, Carldwell's counsel argued that by pleading "guilty," he had saved the victim's family the anxiety, and the "emotional roller coaster" of a trial. 4 RR 20. He did not, however, ask for leniency on that basis. He said that Carldwell was trusting the judgment of the court and leaving the issue of sentencing in the judge's "very capable hands," without asking for a specific term of years. 4 RR 23. The prosecutor asked for the maximum sentence, or "life." 4 RR 27.

Before he accepted the plea of "guilty," the judge asked the defendant these questions regarding the range of punishment:

THE COURT: Now, the offense of murder is a first degree felony. But with the enhancement of a prior felony, it makes it a first degree enhanced. The range of punishment for this offense is from 15 years in prison up to 99 years or life in prison. Any -- and a fine of up to $10,000. Any sentence I hand down on the day of sentencing will have to fall within that range. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Also, the offense of murder is what is considered an aggravated offense. What that means is that any prison sentence you receive, you will have to serve at least one-half of that sentence or 30 years, whichever is less. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: So if I impose a 40-year sentence, you'd have to serve at least 20 years before being eligible for parole. If I impose a sentence of 60 years or more, you will have to serve at least 30 years before being eligible for parole. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And eligibility for parole does not guarantee that parole will be granted. As I said, this case comes before me on what is called an open plea. That means there's no plea agreement. I'm going to listen to any and all testimony; I'm going to review all of the exhibits that are going to be introduced into evidence; I will order what's called a presentence investigation. In that, you will meet with the probation officer and go over your criminal history, facts and other circumstances concerning your past history circumstances.

4

I'll consider all of that. I'll consider any and all testimony in the punishment phase. I'll listen to the arguments of the State's attorney and your attorney.

But I'm not bound by any of those. The only thing I'm bound by is that range of punishment I just gave you, 15 to 99 years or life. Do you understand that?

THE DEFENDANT: Yes, sir.

3 RR 9-10.

After due consideration, the judge pronounced his ruling:

THE COURT: . . . I have looked at this case and I have considered the entire range of punishment.

I've read the offense report on a couple of occasions, looked at all of the exhibits, considered the testimony that's been given today. And having read the PSI, hopefully I have as clear a picture of who Huey Gray was as I do of who Cedric Bernard Carldwell is.

The facts and circumstances of that night [29] indicate two individuals who were drinking, intoxicated probably. I don't -- and the facts don't suggest that you set out that night premeditated to do anybody harm. That does -- that weighs in your favor.

However, what weighs against you right away on that is the fact that you were carrying a firearm. As a five-time convicted felon, you weren't supposed to have a firearm, so that weighs against you. So that's a factor that I considered.

I considered the testimony of who the victim was, the -- whether -- whether the person is somebody who has contributed to society or somebody who was a drain on

society. Every life still needs to be valuable in the eyes of the law.

Mr. Carldwell, the factors that weigh against you, however, is your significant criminal history. I have an individual who was convicted of misdemeanor assault back in '87, that in and of itself was not a big deal; then a possession of prohibited weapon in 1990, 5-year sentence which you didn't even serve basically a year of.

And then we get to the more serious offenses. You have the theft conviction out of Smith County; you have a theft conviction out of Gregg County. And then the one that causes the Court some of the most concern, an attempted murder case here in Gregg County in 1992, with a deadly [30] weapon. Then the attempted kidnapping in 2007 that you got a two-year state jail sentence. After getting out of there, the violence continues with an assault causing bodily injury. And here we are on this case.

And then when you look at the facts of the case, the offense report, the scientific evidence, witnesses state that Mr. Gray just held out his hands and said, "What are you going to do, shoot me?" Yes, you may have been arguing. But then, looking at the autopsy report, you shot at least four times, if not five; at least three of those being in the back.

If you felt threatened, maybe one of them would have been possibly justified; but four to five shots, at least three in the back, that calls for the high end of punishment.

Decisions like this are not something that a Court relishes. I have sat in the back in my office praying and looking over everything of what is the appropriate sentence. I have to look at what I think a jury would do, but by the same token, what in my opinion is justice.

At some point we have to say enough is enough. This is at least your third crime of violence, at least your third with a firearm. Sometimes doing justice is doing the hard thing.

This is not a sentence that I pronounce very [31] often. I don't like doing it. But I believe under the facts and circumstances of this case -- yes, you pled "guilty" in front of me and saved the taxpayers money and time -- but this is one of those cases, when I look at everything together, that still the right thing to do, as hard as it is, is to sentence you to **life in prison with a deadly weapon finding.**

Mr. Carldwell, I don't believe that there's any other sentence that would be appropriate under the facts and circumstances of this case. I know that sentence does not bring back Mr. Gray, and I'm sure it does not make your family happy, but it is in my opinion what justice is under the facts and circumstances of this case.

That is the sentence of the Court.

4 RR 28-31.

After that ruling, the court and defense counsel discussed appellate rights briefly and the court heard an impact statement. 4 RR 32-33. There was, however, no objection to the ruling of the court, and even though Carldwell filed a motion for new trial, he did not address the issue of a disproportionate sentence. See Motion for New Trial, CR 30. A hearing on the motion was set for January 16, 2015, but no record exists that the hearing was held. CR 32. Volume 4 of the reporter's record is a transcription of the Sentencing Hearing, Volume 5 is a

7

collection of the exhibits and Volume 6 is a collection of the sealed exhibits (criminal history of witnesses and victim).

Following the entry of the ruling on November 21, 2014, Carldwell filed a motion for new trial on December 19, 2014. CR 26-31. His notice of appeal was filed February 17, 2015. CR 39-40.

## SUMMARY OF THE ARGUMENT

1) The Appellant has failed to preserve error.

2) The punishment assessed was neither cruel nor unusual.

    A.  Texas has well-established law that if a sentence is within the statutory limits for the crime committed, it is not excessive.

    B.  Federal sentencing guidelines do not control state court sentences.

    C.  Three factors are considered for disproportionality, with first being threshold:

        (1)    the gravity of the offense relative to the harshness of the penalty,

        (2)    the sentences imposed for other crimes in the jurisdiction, and

        (3)    the sentences imposed for the same crime in other jurisdictions.

    D.  Appellant received consideration for his guilty plea.

        (1)    Original indictment alleged two prior offenses.

        (2)    Amended indictment alleged only one.

**ARGUMENT**

The Appellant failed to preserve error. If the court considers his argument on the merits, the trial court correctly determined that Appellant pled "guilty" to the charges alleged in the indictment, and "true" to the enhancement paragraph, and after considering Carldwell's extensive criminal history, he properly sentenced him to life in prison for murder, and made a finding that he had used a deadly weapon. 4 RR 31.

**1) The Appellant failed to preserve error.**

To preserve a complaint for review, an appellant must have presented the trial court with a timely request, objection, or motion stating the specific grounds for the ruling ordered. TX R APP Rule 33.1 (a) (1) (A). Carldwell failed to object when the trial court announced the sentence assessed by the jury. Hence, he preserved nothing for review. See *Hookie v. State,* 136 S.W. 3d, 671 (Tex. App. – Texarkana 2004, no pet.) *Jackson v. State,* 989 S.W.3d 845 (Tex. App.— Texarkana 1999) Although Carldwell moved for a new trial and set a hearing on that motion, the record does not show that a hearing was held or that the motion was granted. Therefore, the motion is presumed to have been overruled by operation of law. Furthermore, that motion for new trial failed to raise any specific complaint regarding the sentence imposed. A general objection preserves nothing for review and is insufficient to apprise the trial court of the complaint urged.

*Fierro v. State*, 706 S.W.2d 310, 318 (Tex. Crim. App. 1986); *Henderson v. State*, 617 S.W.2d 697, 698 (Tex. Crim. App. 1981).

Carldwell's attorney did not ask for a specific sentence; instead, he placed the decision into the trial court's "very capable hands." He did mention that Carldwell's voluntary plea of guilty saved the court time and money, and spared the families the hardship of a trial, but did not suggest a lesser sentence on that basis. 4 RR 19-20. The State asked for a life sentence, based primarily on his violent criminal history. 4 RR 27. After the judge reluctantly sentenced him to life in prison, Carldwell did not preserve error by objecting in any way—neither at the time nor in his motion for new trial--to the severity of his sentence. 4 RR 27-31. Cardwell's sole issue should therefore be rejected and the sentence affirmed.

**2) Punishment assessed was neither cruel nor unusual.**

Even if he had preserved error, his sentence was not excessive.

**A. Texas has well-established law that if a sentence is within the statutory limits for the crime committed, it is not excessive.**

The punishment imposed by the judge was within the range allowed by a valid law for the offense charged, and is therefore not a violation of the prohibition against cruel, unusual punishment under the U. S. and Texas Constitutions, as alleged by Appellant. Texas has long held that any punishment assessed within the range authorized by statute

is not excessive. *See, e.g. Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Price v. State*, 35 S. W. 3d, 136,144 (Tex. App.--Waco 2000); *Moore v. State*, 54 S.W.3d 529 (Tex. App. – Fort Worth 2001); *McNew v. State*, 608 S.W.2d 166,174 (Tex. Crim. App. 1978); *Jackson v. State*, 989 S.W.2d 842, 846 (Tex. App. 1999).

The punishment imposed in the instant case was life in prison, clearly within the range of "life or for a term of years, not more than 99 years and not less than 15 years." Tex. Penal Code § 12.32 and 12.42 (West). This conviction was for murder, a first degree felony, enhanced by a 1991 conviction for possession of a prohibited weapon, a second degree felony.

### B.    Federal sentencing guidelines do not control state court sentences.

The federal sentencing guidelines relied on by Carldwell are not applicable to this case; this murder was charged in a state court as an offense against the State of Texas, not in federal court and not as a federal offense. Carldwell's counsel has offered no binding authority for his claim that the sentence was cruel and unusual, or even for his claim that the federal sentencing guidelines should be applied in a state court.

**C. A reviewing court should three factors for disproportionality, with second and third to be considered only if the court finds gross disproportionality in the first:**
**(1) the gravity of the offense relative to the harshness of the penalty,**
**(2) the sentences imposed for other crimes in the jurisdiction, and**
**(3) the sentences imposed for the same crime in other jurisdictions.**

A claim under the Eighth Amendment is reviewed in a three-part process. *Solem v. Helm* 463 U.S. 277, 103 S.Ct. 3001, 77 L. Ed. 2d 637 (1983). The S*olem* Court overturned, as a violation of the Eighth Amendment, defendant's sentence of life imprisonment without parole. Solem was convicted for writing a bad check for $100. His prior convictions were for third-degree burglary, false pretenses, grand larceny, and driving while intoxicated, all of which, the Court noted, "were all relatively minor. All were nonviolent and none was a crime against a person." *Id.* at 103 S. Ct. 3013.

The *Solem* Court identified three factors to consider in a review of proportionality of a sentence: (1) the gravity of the offense relative to the harshness of the penalty, (2) the sentences imposed for other crimes in the jurisdiction, and (3) the sentences imposed for the same crime in other jurisdictions. *Id.* at 103 S. Ct. 3011.

"*Solem* must now be filtered through the Court's most recent and, indeed, most fractured decision on proportionality, *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L. Ed. 2d 836 (1991)." *Williams v. Scott,* 1994 U.S. App. LEXIS

41605 (5th Cir. Tex. Oct. 26, 1994), citing *McGruder v. Puckett*, 954 F.2d 313, 315 (5th Cir.), cert. denied, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992).

In *Harmelin,* the defendant appealed his mandatory life sentence without parole for possession of more than 650 grams of cocaine. Five Justices held that the sentence was constitutional, but those five could not agree on the grounds. In *McGruder*, the Fifth Circuit Court drew the following conclusion:

> By applying a head-count analysis, we find that seven members of the Court [in *Harmelin*] supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not."

 *McGruder,* 954 F.2d at 316.

According to Justice Kennedy's concurrence in *Harmelin,* a reviewing court must consider the second and third *Solem* factors only if they first conclude that the sentence was "grossly disproportionate" to his offense. *Harmelin,* 111 S. Ct. at 2707 (Kennedy, J., concurring).

In the present case, Carldwell was charged with murder.  His victim had spit in Carldwell's face; Carldwell took out a gun; the victim held his hands out and asked, "What are you gonna to do, shoot me?" Cardwell then fired several shots at his victim, at least three of which entered his back and the victim died soon after arriving at the hospital.

This murder cannot be called a minor, nonviolent, or victimless crime, as the defendant claimed in *Solem*. Additionally, Carldwell had been convicted of several prior felonies, not just the one jurisdictional prior left in the amended indictment. As recited in the prosecutor's summation, Cardwell had the following convictions: carrying a prohibited weapon, theft of property, attempted murder, felony theft, and attempted kidnapping. SX 4-SX 12; 4 RR 24. The judge then summarized the more serious ones as follows: theft in Smith County; theft in Gregg County; attempted murder in Gregg County in 1992, with a deadly weapon; attempted kidnapping in 2007; and assault causing bodily injury. 4 RR 29-30.

The senselessness of this crime, plus the increasing violence of his criminal history, make it obvious that this punishment fit the crime. Appellant cannot make it past the threshold question: Was the sentence grossly disproportionate to the offense? No. It is therefore unnecessary to address the second and third factors.

**E.  Appellant received consideration for his guilty plea.**
    **(1)  The original indictment alleged two prior offenses.**
    **(2)  The amended indictment alleged only one.**

Appellant claims that he received no benefit for accepting responsibility, waiving a jury trial and pleading guilty. (See Appellant's brief at 4). To the contrary, the amended indictment shows that he was first charged with two jurisdictional prior felonies, but that the State dropped the claim of a second prior felony, allowing him to face a punishment range with a minimum of 15 years instead of 25 years.

## CONCLUSION AND PRAYER

In conclusion, the Appellant has offered as his only argument—not preserved—that the Court erred in giving a life sentence. A state district court is not bound by the federal sentencing guidelines he cites. For Carldwell's pleading guilty and not forcing the State to meet its burden of proof in front of a jury, the State agreed to a lower minimum sentence.  But with his long record of increasingly violent crimes, Carldwell deserved the maximum sentence he got. His offense was violent with little or no provocation; the sentence of life was not at all disproportionate. The State prays that this Court deny Appellant's point of error and affirm the conviction and sentence.

Respectfully Submitted,

/s/ Zan Colson Brown
Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
101 East Methvin St., Suite 333
Longview, TX  75601
Telephone: (903) 236–8440
Facsimile:  (903) 236–3701

16

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record by e-filing to

Clement Dunn
140 East Tyler Street, Suite 240
Longview, Texas 75601

clementdunn@aol.com

this 17th day of September, 2015.

/s/ Zan Colson Brown_
Zan Colson Brown
Assistant District Attorney

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing document complies with Texas Rules of Appellate Procedure, Rule 9 (2015) regarding length of documents, in that exclusive of caption, identify of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, it consists of 3,112 words.

/s/**Zan Colson Brown**
Zan Colson Brown
Assistant Criminal District Attorney