**Kearney Earl NASH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 541–83 to 543–83.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 22, 1984.

Lawrence B. Mitchell, on appeal only, Dallas, for appellant.

Henry Wade, Dist. Atty., Tom Streeter, Rider Scott and Ken Carden, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ODOM, Judge.

These are appeals from three convictions for involuntary manslaughter arising from the death of three persons who were riding in an automobile struck by an automobile driven by appellant. Punishment, enhanced by a prior felony, was assessed by the jury at 20 years and a $10,000 fine in each case. The Court of Appeals affirmed the convic-

tions. 651 S.W.2d 432. We granted appellant's petition for review to consider his contention that the trial court committed reversible error in overruling appellant's requested instruction on the lesser included offense of criminally negligent homicide.

Appellant raised the defense of insanity by presenting medical testimony that he was suffering from a mental diseasae referred to as "post-traumatic stress syndrome". Dr. Clay Griffith, a psychiatrist, testified that a person suffering from this mental disease would not be aware of the dangers they might be involved in, potentially involved in, or aware of the consequences thereof. The trial judge instructed the jury regarding the law in insanity under V.T.C.A., Penal Code Sec. 8.01. The jury rejected the insanity defense and found him guilty of involuntary manslaughter. Appellant contends that the medical testimony proved that appellant was sufficiently hampered to the point that he was "unaware" of the risks to himself or to others and, therefore, entitled him to a charge on criminally negligent homicide.

Section 6.03(d) of the Texas Penal Code provides:

"A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

The Court of Appeals disposed of the ground of error as follows:

"Appellant contends that this medical testimony proved that appellant 'was sufficiently hampered to the point that he was *unaware* of the risks to himself or to others' (emphasis added) and, therefore, entitled to a charge on criminally negligent homicide. For the purposes of this opinion we assume, but do not decide, that the medical testimony is evidence that appellant was not aware of the risk because of mental disease. We disagree, however, with appellant's contention that evidence of his inability to be aware of the risk supports a charge on criminally negligent homicide. Under the statute a person acts with criminal negligence when he 'ought to be aware' is the standard by which the determination is made; not whether he was in fact unable to be aware. We conclude that the evidence relied on by appellant does not reach the question of whether appellant 'ought to be aware' of the risk. Accordingly, we hold that the requisite evidence sufficient to raise the issue of criminally negligent homicide is not shown and that the trial court, therefore, did not err in refusing the requested charge. Appellant's first ground of error is overruled."

Although we agree with the conclusion reached by the Court of Appeals, we find its reasoning incorrect. The focus in that court's opinion on the absence of evidence that appellant "ought to be aware" of the risk is not correct. Whether one "ought to be aware" of the risk is a matter of the character of the risk involved. This conclusion is obvious from the statutory definition of criminal negligence in Sec. 6.03(d), quoted above, which concludes with this statement about the character of the risk:

"The risk *must be of such a nature and degree that* the failure to perceive it constitutes a gross deviation from the standard of care that *an ordinary person* would exercise under all the circumstances as viewed from the actor's standpoint." (Emphasis added.)

The Court of Appeals erroneously relied on a finding that the evidence did not show appellant ought to have been aware of the risk. If it is not a risk of which one ought to be aware, then neither criminally negligent homicide nor involuntary manslaughter would have been shown. Involuntary manslaughter is distinguished from criminally negligent homicide by the higher culpable mental state of recklessness.

Section 6.03(c), supra, defines recklessness:

"(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

In *Lewis v. State,* 529 S.W.2d 550 (Tex.Cr.App.1975), quoted with approval in both *Aliff v. State,* 627 S.W.2d 166 (Tex.Cr.App.1982), and *Moore v. State,* 574 S.W.2d 122 (Tex.Cr.App.1978), the Court explained the difference between these two culpable mental states:

"Reckless conduct as defined by V.T.C.A., Penal Code Sec. 6.03(c), involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the results thereof, but consciously disregards that risk. Criminal negligence as defined by V.T.C.A., Penal Code Sec. 6.03(d), involves inattentive risk creation, that is, the actor ought to be aware of the risk surrounding his conduct or the result thereof. At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is found in the failure of the actor to perceive the risk."

Thus, the failure to perceive the risk is the element that distinguishes criminally negligent homicide from involuntary manslaughter.

In this case the evidence by Dr. Griffith that relates to this issue is that appellant was unaware of the risk at the time of the offense. This conclusion of his, however, was based on his medical diagnosis of appellant's condition, and was merely a consequence of the diagnosis that, if believed, would have supported the insanity defense that was submitted in the charge and rejected by the jury.

In *Thomas v. State,* 578 S.W.2d 691, 698 (Tex.Cr.App.1979), the Court held:

"In this case appellant was the only witness for the defense. She testified that her only reason for shooting the pistol was her attempt to escape from a kidnapping and rape. If that testimony was true, she would have been guilty of no offense at all. *As she was either guilty of the offense charged or no offense, a charge on lesser included offenses was not necessary.*" (Emphasis added.)

Similarly, here, the evidence presented the issue that appellant was not guilty under Sec. 8.01 or was guilty of the offense charged. It was not error to refuse a charge on criminally negligent homicide.

The judgments are affirmed.

MILLER, J., dissents.