NUMBER 13-00-680-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                           CORPUS CHRISTI



 

 

RICARDO
SOLIS,                                                     Appellant,

 

                                           v.

 

THE STATE OF TEXAS,                                              Appellee.

 



 

                   On appeal from the 36th District Court

                        of
San Patricio County, Texas.

 



 

                              O P I N I O N

 

                    Before Justices Dorsey, Yañez, and Rodriguez

                                  Opinion by Justice Dorsey

 

Ricardo Solis
appeals his conviction for manslaughter. 
He brings five points of error contending the evidence is legally and
factually insufficient and that he received ineffective assistance of
counsel.  We affirm.








                                                        I. Facts

Alfonso Gonzales and Amanda Molina were at appellant=s house when
appellant put a revolver to his head and clicked the trigger.  Gonzales and Molina did not know that the gun
was unloaded, and appellant intended this as a trick.  Later that day Catarino
ACat@ De La Fuente, III, arrived at appellant=s house.  Appellant got the revolver along with a live
round and an empty round.  He put what he
thought was the empty round into the revolver, pointed it at his own head, spun
the cylinder, and clicked the trigger two or three times.  Then he pointed the gun at Cat and said, AThere=s nothing in
it.@  He pulled the trigger and shot Cat in the
chest, killing him.  Appellant=s confession
was admitted into evidence.  It stated,
in relevant part:

Alfonso
[Gonzales] told me to show Catarino the game I was
playing earlier.  I had the two bullets
in my hand, the empty one and the real one. I placed the one bullet in my pocket
and opened the cylinder and placed what I thought was the empty bullet in the
gun.  I told Catarino,
ALet=s play.@  I spun the cylinder and closed it.  Catarino told me, AYou=ve got to spin it
faster.@  I opened it and spun the cylinder, and then Catarino spun it, and I put the gun to my head, clicked the
trigger.  I opened it again, and again,
nothing happened.  I don=t remember if I
shot at myself two or three times.  I
clicked the pistol back and pointed the gun at Catarino.  I told him, AIt=s your turn,@ and Catarino raised his hands and said, AAll right.@  I clicked the gun, and it went off. . . .

Catarino is my friend,
and it was an accident.

 








Appellant testified that after he took the empty round and the
live round from his pocket he showed Cat the live round and AI turned
around, and I opened the cylinder, and I thought I had the other one right here
(indicating), and IBI don=t know.  I switched them up.@  Appellant stated that A[s]omehow I accidentally put the wrong one in there.  I turned back around.  Had the cylinder open.  All you could see is theByou
could see the back of the shell. . . .@  Appellant had the live round and the empty
round in the same hand, but he did not see which one he was loading into the
cylinder.  His testimony was that he
accidentally put the live round in the gun.

On cross-examination appellant=s testimony was that he knew that a live
round was heavier than an empty round and that a live round had a bullet on top
of the shell.

Appellant
knew that it was dangerous to play with guns, and he agreed that he should have
taken some care before doing this trick. 

                              II. Ineffective Assistance Of Counsel








By his first three points of error appellant complains that he
received ineffective assistance of counsel. 
We analyze claims of ineffective assistance under the test set forth in Strickland
v. Washington, 466 U.S. 668 (1984). 
The accused must show:  (1) that
trial counsel's performance was not reasonably effective, falling below an
objective standard of reasonableness under the prevailing professional norms;
and (2) this deficient performance prejudiced his defense to the extent that
the result of the proceeding would have been different.  Strickland, 466 U.S. at 694. A Areasonable
probability@ means Aa probability
sufficient to undermine confidence in the outcome.@  Id.; Ex parte Walker, 777 S.W.2d 427, 430 (Tex. Crim. App. 1989). 
A showing of deficiency requires a demonstration that trial counsel made
errors so serious that he was not functioning as the Acounsel@ guaranteed a
defendant under the Sixth Amendment.  The
prejudice element requires a showing that trial counsel's errors were so
serious that they deprived the defendant of a fair trial; one whose result is
reliable.  Strickland, 466 U.S. at
687.  The totality of the representation
is evaluated from counsel's perspective at trial, not his isolated acts or
omissions in hindsight.  Ex parte Welborn,
785 S.W.2d 391, 393 (Tex. Crim. App. 1990); Wilkerson
v. State, 726 S.W.2d 542, 548 (Tex. Crim. App.
1986).  The Areasonably
effective assistance@ standard does
not mean errorless counsel.  Ex parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991); Hernandez v. State, 799 S.W.2d
507, 508 (Tex. App.BCorpus Christi 1991, pet. ref'd).  The
appellant has the burden of overcoming this presumption by demonstrating his
trial counsel's performance was unreasonable under prevailing professional
norms, and that the challenged action was not sound trial strategy.  Strickland, 466 U.S.
at 688; Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim.
App. 1991). 

                                            Mistake
Of Fact Defense

 








First appellant complains that trial counsel was ineffective
for failing to request an instruction on mistake of fact, regarding whether he
knew the revolver was loaded.  The
general defense of mistake of fact, as codified in the penal code,
provides:  AIt is a defense to prosecution that the actor
through mistake formed a reasonable belief about a matter of fact if his
mistaken belief negated the kind of culpability required for commission of the
offense.  Tex. Penal Code Ann. ' 8.02(a)
(Vernon 1994) (Emphasis added). 
"Reasonable belief" is defined as a "belief that would be
held by an ordinary and prudent man in the same circumstances as the
actor."  Tex. Penal Code Ann. ' 1.07(a)(31) (Vernon 1994). 
The kind of culpability required for the commission of manslaughter is
"recklessly" or "reckless." 
Tex. Penal Code
Ann. ' 6.03(c) (Vernon 1994).

A defendant is entitled to an instruction on any defensive theory
if the issue is raised by evidence at trial. 
Granger v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). 
If the evidence viewed in a light favorable to appellant does not
establish a mistake of fact defense an instruction is not required.  Id. 


The case ofThibodeaux v.
State, 726 S.W.2d 601 (Tex. App.BHouston [14th
Dist.] 1987, pet. ref'd) helps resolve this
issue.  In Thibodeaux the accused
shot the deceased twice.  He testified
that he did not know the gun was loaded and that he had removed a fully loaded
clip from the gun.  He was convicted of
manslaughter and on appeal complained of the trial court=s failure to
instruct the jury on mistake of fact. 
The appellate court held the accused did not form a reasonable belief
that the gun was not loaded, stating: AWe find [the
accused=s] failure to
look in the chamber of the pistol unreasonable under the circumstances.  His alleged mistake of fact would have been
easily discernible by the simple empirical method of checking the chamber.@  Id. at 604.








Here appellant had a live round and an empty round in the same
hand.  He knew that there was a
difference in weight between a live round and an empty round and that a live
round has a bullet attached to it.  After
inserting the round into the cylinder he did not check to make sure that he had
actually put the empty round rather than the live round in the cylinder.  We cannot conclude under these circumstances
that appellant=s belief, that
the cylinder contained an empty round, was a reasonable belief or a belief
which an ordinary and prudent man could have held in the same
circumstances.  An ordinary and prudent
man who has a live round and an empty round in the same hand, who puts one of
these rounds into the cylinder, and as a trick points the gun at another and
pulls the trigger without first checking to ensure that he in fact put the
empty round in the cylinder, cannot conceivably believe that the gun is
incapable of firing.  Appellant=s failure to
look in the cylinder is unreasonable under the circumstances.  Like the facts in Thibodeaux appellant=s alleged
mistake of fact would have been easily discernible by the simple empirical
method of checking the cylinder.  We
conclude that appellant did not form a reasonable belief that the gun was not
loaded.  We therefore hold that there was
no evidence to support a mistake of fact instruction.  See Thibodeaux, 726
S.W.2d at 604.  Accordingly trial
counsel's failure to request the instruction did not fall below an objective
standard of reasonableness under the prevailing professional norms.  Even if evidence did support a mistake of
fact instruction appellant has not shown how trial counsel=s deficient
performance prejudiced his defense to the extent that the trial=s result would
have been different.  We overrule point
one.

                                                Extraneous
Offense








Second appellant complains that trial
counsel was ineffective for failing to object to the introduction of an
extraneous offense and for eliciting this same extraneous offense during
appellant=s direct
examination.  Alfonso Gonzales testified
for the State during the guilt/innocence phase. 
His testimony was that on the day of the shooting appellant had shown
him two guns, the .38 caliber revolver used in the killing and a 9 mm. pistol.  Trial counsel did not object to this
testimony.  

During appellant=s direct
examination trial counsel asked appellant what he did when Cat arrived at his
house.  Appellant=s testimony was
that he showed Cat the .38 revolver and the 9 mm. pistol.

The jury did not hear any evidence that the possession of the
other pistol constituted another offense. 
Trial counsel=s failure to
object to the testimony regarding the 9 mm. was not outside the wide range of
professional competence.  There is not a
reasonable probability that, but for counsel=s failure to object, the result of the
trial would have been different.  See
Strickland, 466 U.S. at 694.  We
overrule point two.

                                                Limiting
Instruction  

Third appellant complains that trial counsel was ineffective
for failing to request a limiting instruction, either to the jury in open
court, or in the charge, regarding his prior felony convictions.  Appellant testified on cross-examination that
he had previous felony convictions for theft and unauthorized use of a motor
vehicle.  Trial counsel did not request
an instruction to limit the jury=s consideration
of this evidence.








Generally an instruction limiting a jury's consideration of
certain evidence is not required when the evidence is admissible to prove a
main fact in the case.  Porter v. State, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986). 
If, however, evidence is offered for a specific purpose the accused is
entitled upon proper request to a charge limiting the jury's consideration of
that evidence to the purpose for which it was offered.  Id.

Here the State did not elicit this evidence to prove any main
fact issue in the case; it was offered to impeach appellant's credibility.  As such, a limiting instruction was
appropriate.  See id.  However reference to the prior convictions
was minimal, and the State=s
attorney did not use this evidence to attack appellant=s credibility
during final summation at the guilt/innocence phase.

There is a strong presumption that trial counsel's conduct was
reasonable and constituted sound trial strategy.  Strickland, 466 U.S. at 689.  Here it is reasonable to believe that trial
counsel did not want to draw this evidence to the jury=s attention by
requesting a limiting instruction either in open court or in the charge.  Moreover appellant has failed to show that
there is a "reasonable probability" the result of the trial would
have been different had trial counsel requested the limiting instruction.  We overrule point three.                      

                                    III. Sufficiency Of The Evidence

By points four and five appellant attacks
the legal and factual sufficiency of the evidence to support his
conviction.  He argues there is not a
scintilla of evidence to show that he knew he had accidentally placed a live
round in the pistol; therefore, he could not have been aware of the risk
surrounding his playing with the pistol or the results thereof.  He argues that if guilty of any crime he is
guilty only of criminally negligent homicide.








When examining the legal sufficiency of the evidence we apply
the test set out in Jackson v. Virginia, 443 U.S. 307, 319 (1979); Young
v. State, 14 S.W.3d 748, 753 (Tex. Crim. App.
2000).  In analyzing whether the evidence
was factually sufficient to support the conviction we apply the test set out in
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000); Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996).

The court charged the jury on manslaughter and the
lesser-included offense of criminally negligent homicide.  The charge provided that the jury could
convict appellant of manslaughter if they found, beyond a reasonable doubt,
that he Adid recklessly
cause the death of an individual, namely Catarino De
La Fuente, III, by shooting him with a firearm while
pointing the firearm at Catarino De La Fuente, III and pulling the trigger. . . .@  The charge stated that the jury could convict
him of criminally negligent homicide if they found, beyond a reasonable doubt,
that he Aby criminal
negligence, cause[d] the death of an individual, Catarino
De La Fuente, III, by shooting him with a firearm
while knowingly pointing the firearm at Catarino De
La Fuente, III, and pulling the trigger, yet not
knowing whether the firearm was loaded. . . .@

The offense of involuntary manslaughter occurs when a person
recklessly causes the death of an individual. 
Tex. Penal Code
Ann. ' 19.04(a) (Vernon 1994).  Criminally negligent homicide occurs when a
person causes the death of an individual by criminal negligence.  Tex. Penal Code Ann. ' 19.05(a) (Vernon 1994).  The penal code defines the terms recklessness
and criminal negligence as follows:








(c) A person
acts recklessly, or is reckless, with respect to circumstances surrounding his
conduct or the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or
the result will occur.  The risk must be
of such a  nature
and degree that its disregard constitutes a gross deviation from the standard
of care that an ordinary person would exercise under all the circumstances as
viewed from the actor's standpoint.

 

(d) A person
acts with criminal negligence, or is criminally negligent, with respect to
circumstances surrounding his conduct or the result of his conduct when he
ought to be aware of a substantial and unjustifiable risk that the
circumstances exist or the result will occur. 
The risk must be of such a nature and degree that the failure to
perceive it constitutes a gross deviation from the standard of care that an ordinary  person would
exercise under all the circumstances as viewed from the actor's standpoint.

 

Tex. Penal Code Ann. ' 6.03(c), (d) (Vernon 1994).  Here the charge included both of these
definitions.  

The difference between involuntary manslaughter and criminally
negligent homicide is the culpable mental state required for each offense:  recklessness for the former and criminal
negligence for the latter.  Thomas v. State, 699 S.W.2d 845, 849 (Tex. Crim. App. 1985); Nash v. State, 664 S.W.2d 343, 344
(Tex. Crim. App. 1984).  The court of criminal appeals has explained
the difference between these culpable mental states as follows:








Reckless
conduct as defined by V.T.C.A. Penal Code, Section 6.03(c) involves conscious
risk creation, that is, the actor is aware of the risk surrounding his conduct
or the results thereof, but consciously disregards that risk.  Criminal negligence as defined by V.T.C.A.
Penal Code, Section 6.03(d) involves inattentive risk creation, that is, the
actor ought to be aware of the risk surrounding his conduct or the results
thereof.  At the heart of reckless
conduct is conscious disregard of the risk created by the actor's conduct; the
key to criminal negligence is found in the failure of the actor to perceive the
risk.  As defined, criminal negligence is
a lesser culpable mental state than recklessness; mere proof of criminal
negligence would not suffice to support a conviction for the offense of
involuntary manslaughter.

 

Id. at 553
(Emphasis added, footnotes omitted).

The two culpable mental states both require evidence of a
"substantial and unjustifiable risk that . . . the result will
occur," and that the accused's failure to
perceive or conscious disregard of that risk is a "gross deviation from
the standard of care that an ordinary person would exercise under all the
circumstances as viewed from the actor's standpoint."  Thomas, 699 S.W.2d
at 849.  But it is the failure
to perceive the risk that distinguishes criminally negligent homicide from
involuntary manslaughter.  Nash, 664 S.W.2d at 345.

                                                        Analysis








Here the evidence showed that seconds before shooting Cat,
appellant had a live round and an empty round in the same hand and that he did
not check, either by visual inspection, or by feeling the tops of each
cartridge, to be sure that he put the empty round into the cylinder.  Appellant knew it was dangerous to play with
guns and that a person should never point a gun at anyone as it could be loaded
and kill someone.  Despite this knowledge
he pointed the gun at Cat and pulled the trigger without checking to make sure
that he in fact had put the empty round into the cylinder.  Accordingly the jury could conclude that this
is evidence that appellant was Aaware of but
consciously disregard[ed] a substantial and unjustifiable risk that the
circumstances exist or the result will occur@ and that appellant=s Adisregard [of
the risk] constitute[d] a gross deviation from the standard of care that an
ordinary person would exercise under all the circumstances as viewed from the
actor's standpoint.@

Viewing the evidence in the light most favorable to the verdict
we hold that a rational jury could have found the essential elements of
manslaughter beyond a reasonable doubt. 
Further after examining all the evidence under the factual sufficiency
standard we conclude the evidence is factually sufficient to support the
conviction and that the verdict does not shock our conscience.  We overrule points four and five.

We AFFIRM the trial court=s judgment. 

______________________________

J.
BONNER DORSEY,

Justice

 

Do not
publish.

Tex.
R. App. P. 47.3(b).

 

Opinion delivered and
filed

this 25th day of April,
2002.