In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00129-CR
______________________________


RONALD GENE HOOKIE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 30001-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            One week after being cited for maladjusted brakes on his log truck and promising to adjust
them properly, Ronald Gene Hookie was unable to stop the truck at a red light and collided with a
pickup truck in which Laurie Ann Davis was a passenger, killing her. A jury found Hookie guilty
of criminally negligent homicide, and he was sentenced to one year in a state jail facility.
            On appeal, Hookie asserts (1) the evidence was legally and factually insufficient to sustain
his conviction, (2) Article 42.12, Section 4(d)(2) of the Texas Code of Criminal Procedure is
unconstitutional in that it allows only the trial court to probate a sentence in state jail felony cases,
and (3) his sentence was disproportionate to the offense for which he was convicted. We affirm.
Background
            On October 15, 2002, Trooper Dennis Jones of the Texas Department of Public Safety (DPS)
License and Weight Division stopped Hookie, who was transporting a load of logs from a job site
to the mill.


 During the thirty-minute inspection, Jones found twelve violations for which he issued
two citations to Hookie. For the first axle brake that was out of adjustment, Jones declared the truck
out of service,


 meaning that the vehicle could not be operated until measures were taken to remedy
the deviation. Hookie told Jones he could properly adjust the brakes on site, which is a common
practice in the trucking industry according to the testimony of both Hookie and Jones. Jones
believed Hookie would adjust the brakes, so Jones continued on his way. Hookie testified that, as
Jones was leaving, Hookie was already beginning to adjust the brakes. Between October 15 and
October 22, there were no DPS inspections of Hookie's truck. 
            One week later, on October 22, 2002, friends Laurie Davis and Davina Russom were
returning from a trip to Longview after having portraits made of Laurie's daughter and Davina's son. 
On their way home, the four stopped at a fast food restaurant on Highway 80, ate, and continued on
their way. 
            Shortly thereafter, their pickup truck approached and, on a green light, entered the
intersection of Highway 80 and Loop 485. Laurie warned Davina to "Watch that truck," referring
to Hookie's loaded log truck. The warning came too late. The log truck collided with the pickup and
sent it spinning and flipping high into the air. By the time the pickup landed, it was upside down and
had ejected Laurie. The children crawled out the now-broken back window, suffering only minor
injuries. Davina also escaped with minor injuries. Laurie was airlifted to a hospital, but died in
transit due to massive head injuries. 
            After the collision, Hookie stopped his truck approximately 100 feet past the intersection on
Loop 485. Several people talked to Hookie during the moments after the collision. DPS Trooper
Adam Bell was the first to arrive at the scene. Not considering the accident investigation a criminal
one, he interviewed Hookie, who admitted his "brakes didn't hold." The conversation is recorded
by Bell's in-car camera. Hookie said the same to investigating officer Jason Weeks of the
Gladewater Police Department. Weeks called Jones to inspect the truck. Jones learned the truck was
the same one he had inspected one week earlier. This inspection revealed that the brakes were even
further out of adjustment than they had been one week before and that only two of the ten brakes on
the truck complied with safety regulations.


 For instance, the left front axle brake which had, only
one week before, been two and one-eighth inches out of adjustment—and had been the cause Jones
had declared the truck "out of service"—was determined after the accident to be out of adjustment
by two and one-fourth inches.


 The inspection also revealed several other safety violations.
            Hookie admitted he had no brakes when he came to the intersection. He stated that, as soon
as he discovered the brakes had failed, he tried to gear down the truck in order to stop it. Trooper
Carl Davis, who arrived to assist at the scene, testified Hookie told him that the brakes did not work
and that he gears down to stop the truck. Davis testified he passed this information along to Weeks.


 
Weeks testified that the accident investigation turned into a criminal one when he learned the truck
had been declared out of service for violations which remained evident one week later—on the day
of the accident. 
Sufficiency of Evidence
            To review the legal sufficiency of the evidence, we examine the evidence in a light most
favorable to the judgment to determine whether a rational trier of fact could have found all the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). To review the factual
sufficiency of the evidence, we determine whether a neutral review of all the evidence demonstrates
that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). The evidence is sufficient under both
standards.
            A person commits criminally negligent homicide if he or she causes the death of an
individual by criminal negligence. Tex. Pen. Code Ann. § 19.05(a) (Vernon 2003). The Code
defines criminal negligence as follows:
A person acts with criminal negligence, or is criminally negligent, with
respect to circumstances surrounding his conduct or the result of his conduct when
he ought to be aware of a substantial and unjustifiable risk that the circumstances
exist or the result will occur. The risk must be of such a nature and degree that the
failure to perceive it constitutes a gross deviation from the standard of care that an
ordinary person would exercise under all the circumstances as viewed from the
actor's standpoint.

Tex. Pen. Code Ann. § 6.03(d) (Vernon 2003). The failure to perceive the risk distinguishes
criminal negligence from reckless conduct. Nash v. State, 664 S.W.2d 343, 345 (Tex. Crim. App.
1984). Criminal negligence requires that the person should have been aware of the risk surrounding
the conduct or the results of the conduct. Lewis v. State, 529 S.W.2d 550, 553 (Tex. Crim. App.
1975). Thus, the State must prove that a defendant ought to have been aware of a substantial and
unjustifiable risk. Lopez v. State, 630 S.W.2d 936, 940 (Tex. Crim. App. 1982); Thompson v. State,
676 S.W.2d 173, 175 (Tex. App.—Houston [14th Dist.] 1984, no pet.). Also, the State must
establish that the failure to perceive this risk was a gross deviation from the standard of care that an
ordinary person in those circumstances would exercise. Graham v. State, 657 S.W.2d 99, 101 (Tex.
Crim. App. 1983).
            No one argues that the collision did not cause the death of Laurie Davis. Beyond that,
however, to convict, the State must have established (1) that Hookie should have been aware his
conduct posed a substantial and unjustifiable risk and (2) that Hookie's failure to perceive the risk
constituted a gross deviation from the standard of care an ordinary person would have exercised
under similar circumstances. See Stadt v. State, 120 S.W.3d 428, 433 (Tex. App.—Houston [14th
Dist.] 2003, no pet.).
            The record shows, through Hookie's testimony, he has operated a truck for approximately
thirty years and has driven a log truck for five years. From this evidence, the jury could have
reasonably concluded Hookie should have been aware of the substantial and unjustifiable risk posed
by operation of the truck with maladjusted brakes. Further, since Jones had issued citations for the
brakes and had declared the truck out of service due to the poor adjustment of the brakes, that should
have made Hookie realize the substantial risk posed by operation of the vehicle without making the
proper adjustments or without careful daily inspections of those brakes.
            From the evidence, a jury could have reasonably concluded Hookie's continued operation of
the truck with the brakes out of adjustment constituted a gross deviation from the standard of care
an ordinary person would have exercised under those circumstances. Hookie, as the driver of the
truck, had a statutory duty to conduct a daily inspection of the truck, including the condition of the
brakes.


 Further, having heard that brake adjustment is a common concern, the jury could conclude
a reasonable person in those circumstances would have made the repairs after citations were issued
for the safety violations and would have been especially vigilant about the brakes during his or her
daily  inspections.  Hookie  testified  he  did  a  visual  inspection  of  the  truck  the  morning  of
October 22 in which he looked to see if anything was out of the ordinary. The jury either disbelieved
him or determined that, even if he had done as he said and walked around the truck, his cursory
inspection was insufficient to guard against the substantial risk posed under these circumstances. 
Jones also testified, based on his experience as a trooper in the License and Weight Division, that
a reasonable person would not have operated a truck under such conditions.


 There is legally
sufficient evidence of this element of the offense. Examining the evidence in a light most favorable
to the conviction, we conclude the jury reasonably could have found all essential elements of
criminally negligent homicide. 
            Hookie contends that, since he made the repairs October 15, he did not fail to perceive the
risk that poorly adjusted brakes would pose. He argues that the brakes had gone out of adjustment
again by October 22 and that this collision was an unavoidable accident. When a defendant claims 
the result was an unavoidable accident, the courts have treated this as an issue raising the
voluntariness of the act. See Williams v. State, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982) (op.
on reh'g) (stating "the bench and bar would be well advised to avoid the term 'accident' in connection
with offenses defined by the present penal code"). In order to commit a criminal offense, one must
voluntarily engage in the designated conduct by act, omission, or possession. Tex. Pen. Code Ann.
§ 6.01 (Vernon 2003). So, the State was required to show that Hookie committed a voluntary act
with the requisite state of mind. See Rhodes v. State, 997 S.W.2d 692, 694 (Tex. App.—Texarkana
1999, pet. ref'd). That is, the State had to show that Hookie's operation of the truck with badly
maladjusted brakes was committed with criminal negligence.
            Hookie readily admits that the brakes went out and that the light was red when he entered the
intersection. After having compared the violations found October 15 with those found one week
later, on the day of the collision, Jones testified that, in his opinion, Hookie simply had not made the
adjustments he claimed. Further, the jury could have determined from the measurements taken
during the two inspections that the repairs were not made. The left front axle brake was out of
adjustment by two and one-eighth inches October 15; on October 22 the same brake was two and
one-quarter inches out of adjustment. Since the condition of the brakes had worsened, the jury could
have reasonably concluded the repairs were not performed within one week of the accident. Further,
ten out of twelve brakes on the truck were out of adjustment October 22. One brake on axle number
four showed so much rust it appeared to have been inoperable for some time, a defect Hookie would
certainly have noticed had he adjusted all the brakes October 15 as he testified or had carefully
inspected the truck each day. Finally, Davis' testimony that Hookie indicated to him he regularly
used the "gearing down" method to stop the truck due to its faulty brakes weighs in favor of the jury's
verdict. Such conditions lend themselves to a conclusion that the necessary adjustments were not
made October 15 as Hookie stated, or between then and the time of the accident.
            The jury could also rely on the testimony of Davis, who testified Hookie told him the truck's
"brakes don't work." From this, the jury could conclude Hookie did not make the repairs and, thus,
did act with the requisite state of mind. The jury could have reasonably concluded from the evidence
presented to it at trial that Hookie continued to operate the truck after it was declared out of service,
that he should have been aware that doing so created a substantial and unjustifiable risk, and that
such operation was a gross deviation from the standard of care that an ordinary person would
exercise under those circumstances.
            The evidence to the contrary, that is, supporting Hookie's contention the collision resulted
from an accident, consists largely of Hookie's testimony. Again, he concedes that the light was red
and that the brakes were gone. He maintains, however, he made the repairs necessary to get the
brakes back into compliance with safety regulations October 15 immediately after having been cited
for the safety concerns and being notified the truck was declared out of service until the adjustments
were made. He claims to have adjusted every one of the brakes. There is some evidence which
supports this position. Jones and Hookie both testified that brakes going out of adjustment is a
common mechanical problem in the trucking industry and that it is also common for an experienced
truck driver to adjust the brakes on site.
            Reconciliations of conflicts in the evidence is the exclusive province of the jury. Stadt, 120
S.W.3d at 436. We are not to substitute our opinion for that of the jury. Id. Rather, we recognize
that the determination of weight to be given to conflicting evidence often depends on an evaluation
of credibility. See id. Therefore, the jury was free to disbelieve or give less weight to Hookie's
testimony that he made the necessary adjustments to the brakes October 15. We defer to that finding.
            Considering all the evidence in a neutral light, we cannot say the jury's verdict was based on
factually insufficient evidence. The evidence supporting a finding of guilt is not so weak as to
undermine our confidence in the jury's verdict. Nor does the evidence that the collision was the
result of an accident greatly outweigh the evidence supporting the jury's verdict. We overrule
Hookie's points of error regarding evidentiary sufficiency.
Constitutionality of Sentencing
            A jury may not allow a defendant community supervision on conviction of a state jail felony. 
Tex. Code Crim. Proc. Ann. art 42.12, § 4(d)(2) (Vernon Supp. 2004). But, a judge may suspend
the imposition of such a sentence and place a defendant on community supervision. Tex. Code
Crim. Proc. Ann. art. 42.12, § 15(2) (Vernon Supp. 2004). Hookie complains this statutory scheme
deprives him of his right to be considered for community supervision by a jury.



 
            Unless a statutory classification discriminates against a suspect class


 not present here, it need
only be rationally related to a legitimate state purpose. Cannady v. State, 11 S.W.3d 205, 215 (Tex.
Crim. App. 2000). Here, the classification scheme distinguishes between those convicted of a state
jail felony and those convicted of another noncapital felony, not raising any suspect class issue. 
Therefore, the statute is constitutional if there is a rational relationship between the legislative
classification and a legitimate state interest. See Clark v. State, 665 S.W.2d 476, 480–81 (Tex. Crim.
App. 1984).
            In reviewing a statute's constitutionality, we begin with a presumption of the statute's validity,
that is, presuming that the Legislature did not act unreasonably or arbitrarily in enacting the statute
and that it had due regard for constitutional requirements. It is the challenger's burden to show that
the statute is unconstitutional. Every reasonable presumption is made in favor of the
constitutionality and validity of the statute. The statute must be upheld if a reasonable construction
can be ascertained which will render the statute constitutional and carry out the legislative intent. 
We apply a highly deferential standard of review to equal protection claims of this nature. Anderer
v. State, 47 S.W.3d 60, 66 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). One who challenges
the rationality of a legislative classification must carry a heavy burden in that he or she must negate
every conceivable basis which might support the classification. Id.
            The Fourteenth Court of Appeals addressed this issue in Anderer. Id. The Anderer court
held there was a rational basis in the Legislature's decision to give only judges the discretion to grant
community supervision in some cases. Id. The court of appeals reasoned that trial judges, unlike
juries, are familiar with the terms of community supervision, the availability of rehabilitative
programs, and the other unique aspects of the state jail felony system. Id. Thus, the limitation is
rationally related to the State's interest in an efficient criminal justice system.
            Since there is a conceivable basis for maintaining this classification, Hookie has failed to
meet his burden of negating all rational bases for the classification drawn by Section six of Article
42.12.


 We overrule his point of error challenging its constitutionality.
Proportionality of Sentence
            In his third and final point of error, Hookie contends the one-year sentence in a state jail
facility is disproportionate to the offense. Hookie has failed to preserve this issue for our review. 
He did not object to the sentence on the ground it was disproportionate to the crime, or on any other
ground, at the time it was imposed. To preserve a complaint for appellate review, an appellant must
have presented to the trial court a timely request, objection, or motion, stating the specific grounds
for the ruling desired. Tex. R. App. P. 33.1(a)(1)(A); Rhoades v. State, 934 S.W.2d 113, 119 (Tex.
Crim. App. 1996). This Court has held that a defendant is required to raise a disproportionality
objection to a sentence at the time the sentence is imposed. Jackson v. State, 989 S.W.2d 842, 845
(Tex. App.—Texarkana 1999, no pet.). Nothing is presented for our review and, thus, we overrule
this point of error.
Conclusion
            We hold the evidence supporting Hookie's conviction for criminally negligent homicide is
both legally and factually sufficient. Further, we conclude Article 42.12, Section 4(d)(2) does not
violate Hookie's right to equal protection under the federal and state constitutions. See Tex. Code
Crim. Proc. Ann. art. 42.12, § 4(d)(2). Finally, we hold that Hookie failed to preserve error as to
his complaint that his sentence of one-year in a state jail facility is disproportionate to the offense
committed. 
            Accordingly, we affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          January 30, 2004
Date Decided:             April 20, 2004

Publish