COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ALBERTO ANTONIO MENDIOLA, | § | |
| | | No. 08-16-00304-CR |
| Appellant, | § | |
| v. | | Appeal from the |
| | § | |
| THE STATE OF TEXAS, | | 168th District Court |
| | § | |
| Appellee. | | of El Paso County, Texas |
| | § | |
| | | (TC# 20140D01577) |

## MEMORANDUM OPINION

Appellant Alberto Antonio Mendiola was charged with murder and convicted of the lesser-included offense of manslaughter. A jury assessed punishment of 20 years in prison and a $10,000 fine. The trial court entered judgment sentencing Mendiola to 20 years in prison, a $5,000 fine, and a restitution payment of $5,000.

On appeal, Mendiola alleges charge error in the failure to instruct the jury on the lesser-included offense of criminally negligent homicide. He also challenges the sufficiency of the evidence to support his conviction, and he contends he was deprived of a fair trial due to prosecutorial misconduct. In a cross-point, the State challenges the reduction of Mendiola's fine from $10,000 to $5,000. We affirm.

## Background

Appellant Alberto Antonio Mendiola is a United States Army veteran who served in the war in Afghanistan. Late on a Friday night and in violation of a restraining order, he approached the back door of the home of his estranged wife, armed with an M4 rifle, wearing a tactical vest, and carrying extra ammunition. Mendiola saw a man unknown to him sitting in the kitchen, talking and laughing with his wife. In his own words, Mendiola "just kind of snapped." He kicked open a screen door while the complainant, Anthony Bowler, moved to hold the door closed. Mendiola shot Bowler through the door's window, killing him. In interviews with police the next day, Mendiola stated that he had post-traumatic stress disorder, was "always paranoid," and always carried his weapon.

At trial, Mendiola argued an insanity defense, and he also claimed that he lacked intent to kill anybody. In support of those arguments, Mendiola presented expert testimony from a psychologist, Dr. James Shutte, including evidence that he was diagnosed with severe PTSD resulting from his combat experience. Dr. Shutte testified that at the time Bowler was killed, Mendiola did not know his conduct was wrong, and his conduct was both reckless and negligent.

The jury was instructed on the charge of murder, the lesser-included charge of manslaughter, and the insanity defense as applied to each offense. Mendiola requested a jury instruction on criminally negligent homicide, which the trial court refused. The jury rejected the insanity defense and found Mendiola not guilty of murder, but guilty of manslaughter. In the punishment phase, the jury assessed the maximum punishment of 20 years in prison and a $10,000 fine, with no recommendation for community supervision. Over the State's objection, the trial court entered a judgment of conviction by jury, assessing a 20-year prison sentence, a $5,000 fine, and an award of $5,000 in restitution payable to the complainant's mother. Mendiola appeals.

2

**Analysis**

Mendiola raises three challenges on appeal: the trial court's refusal to charge the jury on criminally negligent homicide, the sufficiency of the evidence to support his conviction, and allegations of prosecutorial misconduct that made the trial unfair. For its part, the State challenges the reduction of the fine assessed as punishment by the jury.

I.      **Jury charge**

Mendiola contends that he was entitled to a requested jury instruction on criminally negligent homicide as a lesser-included alternative to the instructions given on murder and the distinct lesser-included offense of manslaughter. A two-part test is applied to determine whether a defendant is entitled to an instruction on a lesser-included offense. *See Cavazos v. State*, 382 S.W.3d 377, 382–83 (Tex. Crim. App. 2012). The first step is a question of law, which "compares the elements alleged in the indictment with the elements of the lesser offense" to determine "if the proof necessary to establish the charged offense also includes the lesser offense." *Id*. at 382. The second step of the test requires consideration of whether there is some evidence that would allow a rational jury to acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Id*. at 383; *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). "If there is evidence that raises a fact issue of whether the defendant is guilty only of the lesser offense, an instruction on the lesser-included offense is warranted, regardless of whether the evidence is weak, impeached, or contradicted." *State v. Meru*, 414 S.W.3d 159, 163 (Tex. Crim. App. 2013). The State concedes that criminally negligent homicide is a lesser-included offense in relation to the charged offense of murder, and thus the first part of the test is satisfied. *See, e.g.*, *Wasylina v. State*, 275 S.W.3d 908, 910 (Tex. Crim. App. 2009). Therefore, the only remaining question is

3

whether there was some evidence that would allow a rational jury to acquit Mendiola of murder while convicting him of criminally negligent homicide.

A person commits criminally negligent homicide by causing the death of another through criminal negligence. TEX. PENAL CODE ANN. § 19.05. A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id*. § 6.03(d). The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id*. Thus, criminally negligent homicide requires a finding that the defendant ought to have been aware of the risk but failed to perceive it. *See Whipple v. State*, 281 S.W.3d 482, 502–03 (Tex. App.—El Paso 2008, pet. ref'd). "The only difference between involuntary manslaughter and negligent homicide is perception of the risk; in the former, that actor recognizes the risk of death and consciously disregards it, while in the latter he is not, but ought to be, aware of the risk that death will result from his conduct." *Saunders v. State*, 913 S.W.2d 564, 565–66 (Tex. Crim. App. 1995). Thus before a charge on criminally negligent homicide is required, the record must contain evidence showing an unawareness of the risk. *Licon v. State*, 99 S.W.3d 918, 928 (Tex. App.—El Paso 2003, no pet.)(citing *Mendieta v. State*, 706 S.W.2d 651, 653 (Tex. Crim. App. 1986)).

In arguing that the evidence supported a jury instruction for criminally negligent homicide, Mendiola contends that because he shot complainant through the back door, he should have been aware that there was a substantial and unjustifiable risk of death. Moreover, he argues that he presented expert testimony that supplied evidence that he "failed to perceive that risk because he experienced a flashback or blackout." Mendiola relies on Dr. Schutte's testimony to establish the

4

propositions that he "suffered from severe post-traumatic stress disorder due to his extensive combat experience in Afghanistan," and that due to this "mental disorder," he "experienced a flashback and, as a direct result, was not able to perceive that his conduct was wrong." Defense counsel read to Dr. Schutte the statutory definition of criminal negligence, TEX. PENAL CODE ANN.§ 6.03(d), and the psychologist testified that Mendiola's conduct could have been criminally negligent. His opinion was explicitly based on his assumption that at the time of the offense, Mendiola did not know his conduct was wrong.

The evidence relied upon by Mendiola is remarkably similar to the evidence found to be insufficient to justify an instruction on criminally negligent homicide in *Nash v. State*, 664 S.W.2d 343 (Tex. Crim. App. 1984). In that case, appellant Nash had raised a defense of insanity by presenting medical testimony that he suffered from PTSD. *See* 664 S.W.2d at 344. A psychiatrist testified that a person suffering from PTSD would not be aware of the dangers in which he was involved, nor would he be aware of the consequences. *See id*. The trial judge in *Nash* rejected an instruction about criminally negligent homicide, but the judge did instruct the jury on the insanity defense, which the jury rejected. *See id*. In affirming the judgment of conviction for involuntary manslaughter, the Court of Criminal Appeals emphasized that the psychiatrist's testimony that the defendant was unaware of risk at the time of the offense was based on the medical diagnosis which, if believed by the jury, would have supported the insanity defense that the jury rejected. *See id*. at 345.

Apart from evidence related to the insanity defense, Mendiola has not identified any evidence in the record that he was unaware of the risk that death would result from him firing his rifle into the kitchen where he saw his wife smiling and laughing with a man unknown to him.

5

Accordingly, it was not a reversible error for the trial court to refuse to instruct the jury on criminally negligent homicide. *See id*.; *Licon*, 99 S.W.3d at 928.

## II. Sufficiency of the evidence

Building on his argument that evidence at trial supported the submission of an instruction for criminally negligent homicide, Mendiola summarily asserts that "[a]s such, the testimony and physical evidence was legally insufficient" to convict him for manslaughter.

Every criminal conviction must be supported by legally sufficient evidence as to each element of the offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). A court evaluating whether this standard has been met must review all of the evidence in the light most favorable to the verdict, to decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). Sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Even if Mendiola were correct that the evidence at trial satisfied the standard to justify submission of an instruction on criminally negligent homicide, such proof would not, in and of itself, be adequate to demonstrate the insufficiency of the evidence to support a conviction on a distinct offense, such as manslaughter in this case. Rather, a challenge to the sufficiency of the evidence requires identification of at least one element of the challenged offense that a rational trier of fact could not have found satisfied beyond a reasonable doubt. Mendiola has failed to

present any such argument, and accordingly we overrule the challenge to the sufficiency of the evidence. *See* Tex. R. App. P. 38.1(i).

## III.    Prosecutorial conduct

In a single issue, Mendiola describes a series of trial events in an effort to suggest that he was denied a fair trial because of prosecutorial misbehavior. The alleged misconduct includes: placement of a box in front of the venire panel that was labeled to indicate an additional charge of "Violation of Protective Order," despite the fact that this charge had been severed from the murder charge at issue in the proceeding; posing highly prejudicial questions to witnesses in bad faith and in violation of a limine order; and by raising untimely objections.

Claims of prosecutorial misconduct are evaluated on a case-by-case basis, and examples resulting in reversal of a conviction have included deliberate violations of court orders in circumstances that are "so blatant as to border on being contumacious." *Stahl v. State*, 749 S.W.2d 826, 830-31 (Tex. Crim. App. 1988) (quoting *Landry v. State*, 706 S.W.2d 105, 111 (Tex. Crim. App. 1985); *see also Perkins v. State*, 902 S.W.2d 88, 96 (Tex. App.—El Paso 1995), *supplemented*, 905 S.W.2d 452 (Tex. App.—El Paso 1995, pet. ref'd). "Prosecutorial misconduct may also be shown where the prosecutor asks a question which is clearly calculated to inflame the minds of the jury and is of such a character so as to suggest the impossibility of withdrawing the impression produced." *Perkins*, 902 S.W.2d at 96 (citing *Huffman v. State*, 746 S.W.2d 212, 218 (Tex. Crim. App. 1988)). To preserve a complaint about alleged misconduct, the defendant must "(1) make a timely and specific objection; (2) request an instruction that the jury disregard the matter improperly placed before the jury; and (3) move for a mistrial." *Id*.

The State contends that Mendiola failed to preserve error. With respect to the complaint about the box placed in the view of the venire panel, there was an extended discussion with the

7

trial judge on this subject, outside the presence of the jury. The judge denied a motion for mistrial, but offered relief in the form of "three extra strikes" representing the three members of the panel who were thought by the judge to have been in a position to see the label on the box. The trial judge further stated: "rather than bring attention to the matter, unless the defense asks me to admonish and instruct the jurors, that's all I'm inclined to do." Mendiola did not request that the jury be instructed to disregard the information on the box label, thereby waiving that complaint.

With respect to various lines of prosecutorial questioning that resulted in sustained objections or expressions of exasperation by the trial judge, Mendiola has failed to identify any specific violation of a limine order or other instruction from the judge. In one instance, the prosecutor attempted to cross-examine a witness about Mendiola going AWOL during his deployment in Afghanistan. A defense objection was sustained, the jury was instructed to disregard the question and answer, and a motion for mistrial was denied. "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). Mendiola offers no argument about why the trial court's prompt remedial instruction was inadequate; moreover, the jury heard from another witness, without objection, that he had been AWOL. *See, e.g.*, *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("overruling an objection to evidence will not result in reversal when other such evidence was received without objection").

In two other episodes identified by Mendiola, the trial court admonished the prosecutor about attempted lines of cross-examination, though in neither case has it been demonstrated that a court order had been violated. After sustaining an objection to the relevance of a repetitive question about Mendiola having sexual intercourse with an acquaintance prior to visiting his wife's home on the night of the offense, the trial judge stated, "Let's move on, please." A week later,

8

during the punishment phase, the judge admonished the prosecutor about attempting to refresh a witness's recollection about Mendiola's involvement in a jail infraction with a document prepared by another person. While the judge effectively sustained evidentiary objections in both instances, the record does not reflect that either situation involved violation of a court order, and in neither case did Mendiola preserve error relating to supposed prosecutorial misconduct by seeking instructions that the jury disregard information or by moving for a mistrial.

Finally, to the extent Mendiola relies on a court order finding that the prosecution made an untimely objection to the form of punishment, he has offered no argument to explain how such post-trial matters contributed to the overall unfairness of the trial. In sum, error was not preserved with respect to the individual episodes described by Mendiola, and collectively the nature of the challenged prosecutorial conduct, which was not shown to involve flagrant disregard of court orders rising to or near the level of contempt, also has not been shown to have rendered the proceeding fundamentally unfair. Accordingly, we overrule the issue alleging that the trial was rendered unfair due to prosecutorial misconduct.

## IV. Reduction of fine

In a single point brought on cross-appeal, the State challenges the reduction of the $10,000 fine assessed by the jury to the $5,000 fine imposed by the trial court. The State did not object to the sentence when it was orally imposed at the conclusion of the sentencing phase. But less than a week later, the State filed an objection in writing, moving to enforce the full fine as assessed by the jury. The State contends that the trial court had a ministerial and mandatory duty to enter the jury's punishment verdict, including the full $10,000 fine, in the written judgment. The State does not challenge the imposition of an award of restitution.

In its 21-page, single-spaced, amended order denying the motion to enforce the jury's punishment verdict, the trial court gave multiple reasons for refusing the State's request. These included findings that "Mendiola, through his attorneys, relied on the words and actions (and lack of actions) and acquiescence of the prosecutors during the chambers conference and pronouncement of sentence;" that granting the motion "would prejudice Mendiola's double jeopardy rights;" that the State purposefully failed to timely object; and that the State "waived its opportunity to mitigate its failure to object by not seeking the Court's reconsideration on the same day, after the plea." On appeal, the State has presented argument that its challenge is nonwaivable, but it has not addressed other justifications recited by the trial court, including the points based on estoppel and double jeopardy concerns.

It is an axiom that a complete argument to reverse the ruling of a trial court must address all independent legal reasons that were advanced by an adverse party or articulated by the judge to support the ruling. To put it another way, a full consideration of an appellate issue requires us to evaluate all of the reasons the trial court gave for the challenged ruling. By failing to address all of the multiple justifications the trial court documented for its ruling, the State has waived its sole issue. *See* TEX. R. APP. P. 38.1(i); *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) ("an appellate court is not required to make an appellant's arguments for her"). Without expressing any judgment on the merits of the trial court's transformation of a $10,000 fine into a $5,000 fine paired with a $5,000 restitution award, we overrule the State's cross-appeal.

**Conclusion**

The judgment of conviction is affirmed.

July 22, 2019

MICHAEL MASSENGALE, Visiting Justice

10

Before McClure, C.J., Palafox, and Massengale, JJ.

(Do Not Publish)